OPINION OF THE COURT
Alice Schlesinger, J.
Petitioner Kennedy McDonnell commenced this proceeding pursuant to article 78 of the Civil Practice Law and Rules requesting a judgment annulling and vacating the determination by respondent Patricia Lancaster as Commissioner of the New York City Department of Buildings (DOB), which terminated petitioner’s employment as a plumbing inspector, and restoring to petitioner all back pay, benefits, service time, vacation time, increments, seniority, and other fringe benefits.
Petitioner claims his termination was arbitrary, capricious and in violation of the state and city “whistleblower” protections codified in Civil Service Law § 75-b and Administrative Code of the City of New York § 12-113. Respondent in its answer claims that petitioner, as a provisional employee, may be terminated for any reason and that petitioner’s inadequate job performance constitutes a good faith basis for his termination. In addition, respondent alleges that petitioner’s whistleblower claims must fail, because both the type of conduct and method of reporting fall outside the scope of Civil Service Law § 75-b and because Administrative Code § 12-113 does not create a private right of action.
Background Facts
On May 9, 2005, petitioner was provisionally appointed as a plumbing inspector for the DOB. Following a series of events, the facts of which are presented differently by both sides, petitioner’s employment was terminated on July 15, 2005, while he was still a provisional employee.
Petitioner alleges that during work he observed that his coworkers were not performing their duties correctly and were allowing dangerous conditions to remain. He reported his *961 observations to his superiors, and claims that as a result he was subjected to harassment and intimidation by his superiors and coworkers, which he reported as well. On June 23, 2005 petitioner reported to his supervisor that he had been offered a bribe while on the job, which he rejected. After receiving the telephone number for the Department of Investigation (DOI) from his supervisor, petitioner reported this incident to DOI by telephone on June 23, 2005 and by letter on June 24, 2005. Petitioner was fired on July 15, 2005. He made numerous failed attempts to obtain information regarding his termination, and then timely commenced this article 78 proceeding.
In contrast, respondent emphasizes alleged incidents of insubordination by petitioner and difficulties on the job. Respondent cites situations, documented in a May 30, 2005 e-mail from Assistant Chief Plumbing Inspector Daniel Colone of the Bronx to Chief Daniel Prendergast, where petitioner’s training supervisor allegedly had to apologize for petitioner’s offensive conduct and lack of professionalism on the job. In addition, respondent asserts that petitioner was hard to train because he would reject instruction with which he did not agree, challenge his superiors and fail to take notes. While respondent discusses petitioner’s reporting of the bribery attempt, she does not address the claim that petitioner’s supervisor gave him the telephone number for DOI.
Respondent also provides a copy of petitioner’s performance evaluation dated July 1, 2005, about one week after petitioner reported the bribery attempt and two weeks before his firing. In the evaluation, petitioner was rated as conditional because he “could not get along with other inspectors” and was considered “too high strung.” On July 7, 2005 petitioner was the subject of a complaint made to the DOB Office of Internal Audits and Discipline by three of his supervisors. In this complaint, the supervisors admitted that petitioner was knowledgeable about plumbing, but recommended termination because of petitioner’s problems with coworkers and supervisors. In another complaint about petitioner brought around the same time, the supervisors asserted that petitioner had inspected sites that did not need inspection and had improperly raised issues where it appeared that the code had been followed. The complaint also referenced an alleged situation where petitioner showed up at his superior’s vacation home uninvited. Finally, respondent discusses a complaint filed by a private plumber against petitioner. This complaint stemmed from an incident on July 8, 2005, when *962 petitioner allegedly gave the plumber a failing mark on a spot inspection because the perforated drawings which petitioner had requested were being kept downstairs in a shanty due to rain, instead of on the first floor with the foreman as required by law.
Although petitioner does not discuss any of these incidents in his petition, in his reply he takes exception to respondent’s recitation of the facts. In addition, petitioner claims that respondent has included no affidavits to support the assertions made in the e-mail or to support any of the incidents discussed in the answer. Petitioner also emphasizes that all of the documentation of his alleged problems on the job came after his disclosure to his supervisor of his coworkers’ poor job performance and the attempted bribery. He correctly notes that, but for the May 30, 2005 e-mail, mistakenly interpreted as being sent on January 24, 2006 based on the forwarding date, all of the documentation reporting petitioner’s alleged poor performance occurred after petitioner’s whistleblowing disclosures.
Discussion
A. Petitioner’s Status as a Provisional Employee Does Not Bar a Claim under Civil Service Law § 75-b
Wholly without merit is respondent’s argument that Civil Service Law § 75-b does not apply to a provisionally appointed employee like petitioner. Civil Service Law § 75-b uses very broad language to define the types of protected public employees who can seek protection under this statute, including “any person holding a position by appointment or employment in the service of a public employer except judges or justices of the unified court system and members of the legislature.” (Civil Service Law § 75-b [1] [b].) Based on the statute’s definition, a provisional employee, just like any regular employee, is entitled to assert a claim under Civil Service Law § 75-b.
In addition, the cases relied upon by respondent are distinguishable because none of them deals with a claim under Civil Service Law § 75-b, interpreting instead situations where no claim of a statutory violation has been asserted. As the First Department explained in Matter of Brown v City of New York (280 AD2d 368, 370 [1st Dept 2001]), a provisional employee may be discharged for any reason absent a showing that the dismissal was “in bad faith, for a constitutionally impermissible purpose or in violation of law.” Since petitioner here is alleging that he was unlawfully discharged in retaliation for a whistle-blowing disclosure, the alleged “violation of law” entitles him to judicial review of his discharge.
*963 B. Requirements of Civil Service Law § 75-b
For petitioner to make a successful claim under Civil Service Law § 75-b, he must show both that the conduct reported meets one of the two requirements in section 75-b (2) (a), and that the way in which the conduct was reported meets the requirements under paragraph (b) of the same provision. The burden is on the petitioner in the first instance to present evidence of a statutory violation, which in this case means showing that petitioner’s claim meets the requirements of Civil Service Law § 75-b. If petitioner meets this burden, then it becomes respondent’s obligation to establish an independent basis for termination.
Thus, in Matter of Hernandez v City of White Plains (301 AD2d 523 [2d Dept 2003]), the appellate court ultimately reversed the trial court’s order for a hearing, since it found petitioner had failed to meet his burden of showing in the first instance that he had been discharged in bad faith or in violation of law. The Second Department explained that
“[w]hile a hearing may be required to resolve issues of fact regarding whether the reasons for the termination were impermissible, the petitioner bears the burden of presenting competent proof of the alleged bad faith, the violation of statutory or decisional law, or the unconstitutional or illegal reasons” (301 AD2d at 524 [citations omitted]).
Similarly, in Matter of Chamberlin v Jacobson (260 AD2d 317 [1st Dept 1999]), cited by respondent, the First Department affirmed the lower court’s decision to deny petitioner’s article 78 application to compel reinstatement to his former position in the New York City Department of Correction. The First Department held that “[t]here is no basis to find that petitioner was terminated solely in retaliation for his purported whistleblowing disclosures” because respondent had offered proof to show that petitioner had been fired due to “budgetary concerns and his lack of the appropriate professional background” (at 317). However, as will be discussed below, where there is a question of fact as to the existence of an independent basis for termination, a hearing is necessary.
C. The Misconduct Alleged by Petitioner Falls Within the Scope of Civil Service Law § 75-b
Respondent asserts that the reported conduct, a bribery attempt, is outside the scope of Civil Service Law § 75-b (2) (a). The parties agree that the bribery attempt does not fall under paragraph (a) (ii) because it is not an improper governmental *964 action as defined by the statute.[1] However, subdivision (2) (a) (i) of that section encompasses conduct “regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety.” Respondent argues that a failed bribery attempt, while reprehensible, does not pose a substantial danger to public health or safety. In contrast, petitioner argues that since plumbing inspectors are hired to ensure that all relevant codes and standards are followed, a bribery attempt, which if successful could circumvent ensuring that this work is done with the utmost care, creates a substantial and specific danger to public health or safety.
After reviewing the arguments of both parties, the court finds that a failed bribery attempt does indeed meet the “substantial and specific danger to the public health or safety” requirement of this provision and constitutes the type of conduct that is protected by Civil Service Law § 75-b. The cases respondent cites are distinguishable since they deal with claims brought under Labor Law § 740. Labor Law § 740 has different requirements than Civil Service Law § 75-b, which are not applicable in the present case.
Petitioner has, in any event, offered a second basis for his Civil Service Law § 75-b claim, pointing to reports he made about his coworkers’ alleged misconduct which he reasonably believed constituted improper governmental action that posed a specific danger to the health and safety of the public. Unlike the bribery attempt, which only met one of the two alternate criteria required under Civil Service Law § 75-b (2) (a), the incidents relating to the coworkers’ alleged misconduct could meet either of the criteria under section 75-b (2) (a). First, petitioner must be able to show that the alleged misconduct was in violation of a “law, rule or regulation.” Then, since the alleged misconduct included the use of faulty valves, improper gas meters, and the placement of gas close to an infant’s bedroom, such actions would meet the “substantial and specific danger to the public health or safety” requirement of Civil Service Law § 75-b (2) (a) (i). Secondly, the alleged misconduct can be considered “im *965 proper governmental action” as defined by the statute,[2] given that petitioner’s coworkers are public employees and their alleged actions were done in the performance of their official duties. Therefore, this reported conduct could also meet the criteria of Civil Service Law § 75-b (2) (a) (ii) in that it arguably violated “any federal, state or local law, rule or regulation.”
*964 “ ‘[i]mproper governmental action’ shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent’s official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.”
*965 D. Civil Service Law § 75-b (2) (b) Reporting Requirement Must also be Satisfied
In addition to the above showing, petitioner must also satisfy the reporting requirements of section 75-b (2) (b). Respondent argues that out of petitioner’s claims, only the bribery attempt deserves attention because the others fail to meet the reporting requirements of this provision. Civil Service Law § 75-b (2) (b) requires that:
“Prior to disclosing information [to a governmental body], an employee shall have made a good faith effort to provide the appointing authority . . . the information to be disclosed and shall provide the appointing authority ... a reasonable time to take appropriate action unless there is imminent and serious danger to public health or safety.”
While petitioner reported both the alleged misconduct of his coworkers and the bribery incident to the appointing authority, his supervisor, he failed to report anything other than the bribery attempt to a governmental body.
Petitioner’s assertions notwithstanding, the case law indicates that reporting to both an appointing authority and a governmental body is necessary to make a claim under Civil Service Law § 75-b. As explained in Bal v City of New York (266 AD2d 79 [1st Dept 1999]), merely reporting the alleged misconduct to a supervisor does not constitute the required disclosure to a governmental body necessary to make a claim under Civil Service Law § 75-b. Similarly, in Brohman v New York Convention Ctr. Operating Corp. (293 AD2d 299 [1st Dept 2002]), the First Department affirmed this court’s decision, dismissing the Civil Service Law § 75-b claim on the ground that petitioner had failed to disclose the alleged misconduct to an appropriate appointing authority prior to reporting it to the governmental body. Therefore, since petitioner only reported the alleged bribery to both an appointing authority and governmental body, only that claim remains viable under Civil Service Law § 75-b.
*966 However, respondent claims that even if the bribery attempt was appropriately reported to both an appointing authority and a governmental body, this claim should still fail because petitioner did not allow a reasonable time between when he reported the incident to his supervisor and his contact with the Department of Investigation. According to Civil Service Law § 75-b (2) (b), a reasonable time must be allowed between reporting information to an appointing authority and a governmental body in order to afford the appointing authority a chance to take appropriate action. In response, petitioner asserts that, according to the latter portion of paragraph (b), a reasonable time is not needed when “there is imminent and serious danger to public health or safety.” Petitioner claims that a bribery attempt poses an imminent and serious danger to public health or safety because if such conduct is allowed to occur, building safety, which plumbing inspectors are supposed to ensure, is at high risk. Secondly, petitioner argues that since it was his supervisor who had given him the telephone number for DOI in response to the reported bribery attempt, respondent should not be allowed to argue that petitioner did not afford his supervisor a reasonable time to take appropriate actions to handle the situation.
Respondent relies on Matter of Garrity v University at Albany (301 AD2d 1015 [3d Dept 2003]) to support her argument that petitioner’s Civil Service Law § 75-b claim should fail here because he reported the bribery to DOI by telephone the same day that he informed his supervisor. In Garrity, petitioner, a probationary pharmacist, had his Civil Service Law § 75-b claim dismissed because he had failed to allow a reasonable time between when he reported the questionable conduct to an appointing authority and his report to a governmental body the very next day, Garrity did not allow his appointing authority adequate time to take appropriate steps to deal with the situation. However, the facts in Garrity are distinguishable from those in the present case because here petitioner’s supervisor gave him the telephone number of a governmental body to contact (DOI) after petitioner went to him to report the bribery. This act may well have been interpreted by petitioner to mean that the appropriate next step was to contact DOI and/or that his supervisor was unwilling to deal with the situation himself.
However, the papers presented here do not provide sufficient detail about the circumstances surrounding petitioner’s receipt of DOI’s telephone number from his supervisor. Therefore, after *967 reviewing the arguments, the court finds that whether or not the reporting of the bribery attempt meets the Civil Service Law § 75-b (2) (b) criteria remains a question of fact.
E. A Hearing is Directed Under CPLR 7804 (h)
CPLR article 78 governs special proceedings brought against a body or officer, including this proceeding against the Commissioner of the New York City DOB, Patricia Lancaster. CPLR 7804 (h) states in part that “[i]f a triable issue of fact is raised in a proceeding under this article, it shall be tried forthwith.” (See also, Matter of Pantelidis v New York City Bd. of Stds. & Appeals, Sup Ct, NY County, Sept. 5, 2003, Schlesinger, J., Index No. 102563/03, affd 13 AD3d 242 [1st Dept 2004].) Since an issue of fact has been raised here in regard to both the criteria of Civil Service Law § 75-b (2) (b), as well as to the existence of an independent basis for petitioner’s termination, a trial is not only necessary, but statutorily compelled.
A hearing pursuant to CPLR 7804 (h) is necessary to determine whether petitioner is entitled to Civil Service Law § 75-b protection. Although I have found that the bribery attempt here can constitute the type of conduct protected by Civil Service Law § 75-b, the court must determine whether the reporting requirement of Civil Service Law § 75-b (2) (b) has been met. If the reporting requirement has not been met, then petitioner’s claim must fail. However, if the court determines the reporting requirement has been met, then the burden will shift to the respondent to prove the existence of a good faith basis for petitioner’s termination. (See Chamberlin, supra.) If respondent proves that petitioner was discharged for a reason independent of his disclosure of the whistleblowing information, petitioner’s claim under Civil Service Law § 75-b must fail. However, since there is conflicting information pertaining to the existence of an independent basis for petitioner’s termination, this material issue of fact must also be addressed at the CPLR 7804 (h) hearing.
In Rameau v Cannon (141 AD2d 454 [1st Dept 1988]), the appellate court reversed the lower court’s decision to annul petitioner’s discharge as a case manager with the Bronx Borough of Developmental Services[3] without first holding a hearing and resolving outstanding issues. The First Department explained that
*968 “[w]hile the record contains substantial evidence that petitioner’s performance was marginal, at best, and that his termination as a probationer was based solely on poor performance, there is also an indication that his termination may have been the culmination of an effort to silence his ‘whistleblowing’ activities.” (141 AD2d at 454.) Based on this finding, the Court concluded that enough had been shown to warrant a judicial hearing to determine whether petitioner’s termination had been made in good faith, and it remanded the case to the trial court for a hearing. Likewise, in Garrity, the appellate court reversed the trial court’s decision, finding that there was sufficient evidence on the record to warrant a hearing to determine whether petitioner’s termination “was made in bad faith or related to work performance.” (301 AD2d 1017.)[4] Also, as in this case, in Garrity “there [was] no documentary evidence confirming respondents’ allegation that insubordination and inability to work with others were reasons for termination contemplated before petitioner’s whistleblowing.” (Id.)
In addition, in Matter of Weber v County of Nassau (215 AD2d 567 [2d Dept 1995]), the Second Department affirmed the trial court’s order for a hearing because petitioner had raised a material issue of fact regarding whether her dismissal had been in bad faith. In Weber, petitioner was a probationary mental health representative for the Nassau County Department of Mental Health. During her employment she learned of a situation which she believed she was required to report pursuant to Social Services Law § 413. Petitioner’s supervisor told her not to file such a complaint, and she alleged that she had been discharged because of her intention to do so. In contrast, the County contended that petitioner was discharged because of unsatisfactory work performance. As a result of these conflicting facts, the trial court conducted a hearing on the matter and found that petitioner had been wrongfully discharged and directed that she be reinstated. While the Second Department ultimately reversed the trial court’s decision to grant judgment in favor of petitioner (since Social Services Law § 413 did not actually ap *969 ply), it supported the trial judge’s decision to conduct a trial on this matter since petitioner had raised material issues of fact as to her termination.
In the present case, as in the above cases, the parties present conflicting claims as to why petitioner’s employment was terminated. Petitioner provided evidence, including documentation of the complaints he made in regard to his coworkers’ conduct and the bribery attempt, to support the claim that his termination was the result of retaliation for his whistleblowing disclosures. In addition, petitioner points out that aside from the e-mail offered by respondent (which petitioner asserts has admissibility issues), all other documentation to support the independent basis for petitioner’s termination was completed after his complaint to his supervisor and the DOI in regard to the bribery attempt. However, respondent submitted an e-mail, performance evaluations, and formal complaints to support an independent basis for petitioner’s termination. Therefore, as in Rameau, Garrity and Weber, issues of fact exist warranting a hearing to determine whether petitioner’s discharge violates Civil Service Law § 75-b.
Conclusion
The purpose of the CPLR 7804 (h) hearing directed here is twofold. First, the court must determine based on the evidence presented by the parties whether the reporting requirement outlined in Civil Service Law § 75-b (2) (b) has been met. Assuming the court finds in favor of petitioner on that point, it must then decide whether respondent has established a good faith basis for petitioner’s termination.[5]
Accordingly, it is hereby ordered that the petition is granted to the extent of directing a hearing consistent with this decision.

. Civil Service Law § 75-b (2) (a) explains that

. See n 1.

. A division of the New York State Office of Mental Retardation and Developmental Disabilities.

. However, the petitioner in Garrity, a probationary pharmacist who brought a claim under Civil Service Law § 75-b, could not succeed because he had failed to allow a reasonable time between reporting the information to an appointing authority and a governmental authority.

. In this proceeding petitioner claims a violation of both Administrative Code of the City of New York § 12-113 and Civil Service Law § 75-b. Since there is a private right of action pursuant to Civil Service Law § 75-b, it is unnecessary at this time to address respondent’s claim that no private right of action exists under Administrative Code of the City of New York § 12-113.